UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PRAPRICE COLLINS,<br><br>    Plaintiff<br><br>v.<br><br>KARYN FLORENCE PAGE, et al.,<br><br>    Defendants | Case No.: 2:22-cv-02137-APG-NJK<br><br>**Order (1) Granting in Part and Denying in Part Defendant RTC's Motion to Dismiss and (2) Granting Defendant Clark County's Joinder**<br><br>[ECF Nos. 5, 6] |

  Praprice Collins was waiting at a bus stop when a car driven by Karyn Florence Page jumped the curb and struck her. Collins sues Page, the Regional Transportation Commission of Southern Nevada (RTC), Clark County, and Keolis Transit Services LLC (Keolis) for her injuries. Collins alleges a Fourteenth Amendment violation of substantive due process under 42 U.S.C. § 1983 and a state law claim for negligence and gross negligence against RTC, Clark County, and Keolis.[1] RTC moves to dismiss on various grounds. Clark County joins that motion and additionally moves to dismiss because it is not a proper party. Collins opposes RTC's motion and Clark County's joinder, but she does not address Clark County's argument that it is not a proper party.

  I dismiss Collins's § 1983 claim with leave to amend if facts exist to do so. If Collins does not file an amended complaint, I will remand the case to state court because no viable federal claims will remain. Accordingly, I decline to address the state law claim at this time, and I deny without prejudice RTC's motion to dismiss the state law claims. I also dismiss Clark County from this action because Collins did not oppose its argument that it is not a proper party.

---

[1] Collins brings only a state law claim for negligence against Page. Page has not moved to dismiss that claim, so I do not address it.

## I. BACKGROUND

On November 17, 2020, Collins was waiting at a bus stop on Charleston Boulevard, 177 feet east of Rainbow Boulevard, when she was struck by Page's car. ECF No. 1-1 at 7, 12. Collins alleges that Page was intoxicated while driving. *Id.* at 8. Page's car was headed eastbound on Charleston when it jumped the sidewalk and struck Collins, injuring her. *Id.* at 8, 12-13.

According to the complaint, RTC, Clark County, and Keolis[2] operate a public transportation system that includes the bus stop at issue; they own and control that bus stop; and they are responsible for planning and constructing bus stops, including selecting locations and design. *Id.* at 18. Collins alleges that, before the incident, these defendants were on notice that "the Las Vegas area, compared to other metropolitan areas in the United States, has a much higher rate of incidents in which vehicles driven by intoxicated drivers leave the roadway and strike bus passengers waiting at bus stops." *Id.* These defendants were also on notice that the danger posed to bus passengers is "further increased when bus stops are placed near intersections, and particularly, on the 'far side' of intersections" and that certain "safety solution[s]," such as placing a bus stop on the "near side" of the intersection, raising curb height, or installing barriers or bollards, can make bus stops safer from vehicles leaving the roadway. *Id.* at 19. At some time prior to Collins being struck, these defendants relocated the bus stop at issue 20 feet east to its current location but did not implement Collins's proposed safety solutions. *Id.* at 20. Collins alleges that implementing one or more of the safety solutions would have prevented her from being hit. *Id.*

---

[2] Keolis is alleged to be a company doing business in Clark County. ECF No. 1-1 at 7. It is unclear from the complaint what role Keolis plays in the transportation system.

Collins claims that RTC, Clark County, and Keolis failed to warn her of the dangers at the bus stop; failed to relocate the bus stop to the "near side" of the intersection where it would be safer; and failed to implement other safety solutions. *Id.* at 19.  In sum, Collins claims that these defendants failed to provide a safe location for her to wait for the bus. *Id.* at 20.

**II. DISCUSSION**

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in a light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, I do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017).  Mere recitals of the elements of a cause of action, supported by conclusory statements, do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plaintiff must also make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678.  When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

  **A.  Clark County**

In its joinder to RTC's motion to dismiss, Clark County contends that it is not a proper party because Nevada law created RTC to operate the public transit system in Clark County. ECF No. 6 at 3.  Specifically, in counties with a population of more than 700,000, RTC "shall provide for the construction, installation, and maintenance of benches, shelters and transit stops for passengers of public mass transportation." Nev. Rev. Stat. § 277A.330.  If Clark County has

3

no role in locating or constructing bus stops, it cannot be liable for Collins's injuries. Collins does not respond to Clark County's argument, which constitutes a consent to the granting of the motion. LR 7-2(d). Therefore, I dismiss all of her claims against Clark County.

### B. Section 1983 Claim

RTC moves to dismiss the § 1983 claim, contending that there is no underlying violation of a federal constitutional or statutory right.[3] Clark County joins in this argument. Although Keolis did not move to dismiss or join RTC's motion, because the complaint alleges the same conduct against all three of these defendants and the briefs do not distinguish between them, the claim is plausibly alleged as to all or none of them. Collins contends that she has pleaded a cognizable § 1983 claim based on the state-created danger doctrine.

Generally, the government's failure to protect an individual from a third party does not constitute a violation of the Due Process Clause. *Deshaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). In other words, "[s]imply failing to prevent the acts of a private party is insufficient to establish liability" for a substantive due process claim. *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019). This is because the Due Process Clause is a "limitation on state action" rather than a "guarantee of certain minimal levels of safety and security." *Id.* (quoting *Deshaney*, 489 U.S. at 195).

The Ninth Circuit recognizes a "state-created danger" exception to this general rule, which applies when "the state affirmatively places the plaintiff in danger by acting with deliberate indifference to a known or obvious danger." *Patel v. Kent Sch. Dist.*, 648 F.3d 965,

---

[3] RTC and Clark County also argue that qualified immunity applies to them. ECF No. 5 at 7-10. However, qualified immunity applies only to individual government officials, not entities. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

4

971-72 (9th Cir. 2011) (quotation omitted). If the exception applies, a state's omission or failure to protect an individual may give rise to a § 1983 claim. *Id.* at 972.

The first requirement of the state-created danger exception is that the state's affirmative conduct exposed the plaintiff to "an actual, particularized danger that [she] would not otherwise have faced," and "the resulting harm must have been foreseeable." *Polanco v. Diaz*, 76 F.4th 918, 926 (9th Cir. 2023) (quotation omitted). For example, in *Sinclair v. City of Seattle*, the Ninth Circuit found that the City of Seattle affirmatively created an actual danger in the protestor-occupied Capitol Hill area because it left behind barriers that occupiers used to block off streets; provided portable toilets, lighting, and other support to the occupiers; and withdrew law enforcement from the area. 61 F.4th 674, 681 (9th Cir. 2023). These acts "incubated a more lawless and violent environment compared to the status quo." *Id.*

The second requirement is that the state acted with "deliberate indifference to a known or obvious danger."[4] *Patel*, 648 F.3d at 971-72. "[D]eliberate indifference is a subjective standard that requires a plaintiff to allege facts supporting an inference that the [state] recognized an unreasonable risk and actually intended to expose the plaintiff to such risk."[5] *Polanco*, 76 F.4th at 928 (quotation omitted). Deliberate indifference is a "stringent standard of fault" that is "higher than gross negligence and requires a culpable mental state." *Murguia v. Langdon*, 61 F.4th 1096, 1111 (9th Cir. 2023) (quotation omitted). For example, in *Patel*, the Ninth Circuit held that a teacher who allowed a special education student to go to the bathroom on her own,

---

[4] When the state's conduct follows an opportunity for deliberation, such as here, deliberate indifference satisfies the "shocks the conscience" standard that creates a cognizable due process violation. *See Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).

[5] In a different context, the Ninth Circuit has held that the requisite mental state for a due process violation is an objective form of deliberate indifference, but it continues to use a purely subjective standard for state-created danger claims. *Polanco*, 76 F.4th at 928 n.7.

where the student then had sex with another student, was not deliberately indifferent because the teacher "did not know about any immediate risk." 648 F.3d at 975.  It was not enough that the teacher knew the student "required extensive supervision and had been involved in past bathroom incidents, the details of which were unknown to [her]." *Id.* at 975-76.  Rather, the teacher had to know that there was "*immediate* danger" in allowing the student to use the bathroom alone. *Id.* at 976 (emphasis in original).  The Ninth Circuit noted that "[t]his would be a different case" if the teacher had known the two students were about to be alone together, "yet then stood idly by." *Id.* at 975.

The only affirmative state conduct Collins alleges is that RTC, Clark County, and Keolis "relocated the bus stop approximately 20 feet to the east of its previous location and to a position further away from the traffic stream" while being "on notice [that this relocation] would not improve passenger safety." ECF No. 1-1 at 10-11.  Otherwise, Collins alleges only that these defendants "failed to warn" her about the danger at the bus stop, "failed to relocate the bus stop" to the other side of the intersection, and "failed to implement" other safety solutions. *Id*.  None of these is an affirmative act. *Cf. Polanco*, 76 F.4th at 926 (finding "plainly affirmative conduct" when prison officials ordered a transfer of inmates from a prison with COVID-19 cases to a prison without COVID-19 cases, causing a prison guard to contract the illness and die).

Without more, it is not plausible that the relocation of the bus stop by 20 feet exposed Collins to an actual, particularized danger that she would not otherwise have faced.  The danger alleged is a vehicle driven by a private person leaving the roadway, jumping the sidewalk, and striking Collins while she waited at a bus stop.  The allegations do not plausibly show how RTC, Clark County, or Keolis affirmatively created that danger or how they created a more dangerous situation compared to what already existed on the streets of Las Vegas.

6

Additionally, Collins has not plausibly alleged RTC, Clark County, and Keolis were deliberately indifferent. She alleges these defendants knew of the Las Vegas area's "higher rate of incidents in which vehicles leave the roadway and strike bus passengers waiting at bus stops" and that the "danger posed to bus passengers … is further increased when bus stops are placed near intersections, and particularly, on 'the far side' of intersections." ECF No. 1-1 at 9. But the complaint gives no indication of the actual likelihood or immediacy of these accidents occurring at the bus stop at issue. I cannot reasonably infer from a generalized risk of vehicles leaving the roadway in the Las Vegas area that the defendants knew of an immediate risk of a person being struck at the bus stop at issue. Therefore, it is not plausible that these defendants recognized an unreasonable risk and intended to expose Collins to that risk.

Because Collins's § 1983 claim is based on her being struck by a vehicle driven by a private person, there is no government liability unless Collins plausibly alleges that the defendants' conduct meets the state-created danger exception. Even taking the alleged facts in the light most favorable to Collins, she does not. Therefore, I dismiss Collins's § 1983 claim. But because it is not clear that amendment would be futile, I grant her leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." (quotation omitted)).

**C. State Law Claim**

Collins also brought a state law claim for negligence and gross negligence against RTC, Clark County, and Keolis, based on the same facts. ECF No. 1-1 at 13-17. I have supplemental jurisdiction over that claim under 28 U.S.C. § 1367(a). I may decline to exercise supplemental jurisdiction if:

>(1) the claim raises a novel or complex issue of State law,
>(2) the claim substantially predominates over the claim or claims over which [I have] original jurisdiction,
>(3) [I have] dismissed all claims over which [I have] original jurisdiction, or
>(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  If I determine that one or more of these conditions exists, I must then consider whether exercising jurisdiction would ultimately serve "the principles of economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988). If these considerations do not favor exercising supplemental jurisdiction, I should hesitate to exercise jurisdiction over the state claim. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  Whether to decline the exercise of supplemental jurisdiction under § 1367(c) lies within my discretion. *Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008).

      I have dismissed the only federal claim over which I had original jurisdiction.  I am not inclined to exercise supplemental jurisdiction over Collins's state law claim if she cannot plausibly allege a federal claim.  Collins contends that the case should be remanded to state court if I dismiss her federal claim.  The defendants do not address this argument in their replies.  The case is at an early stage, so no party will be unduly prejudiced if the case is remanded to state court.  Accordingly, if Collins does not amend her complaint to assert federal law claims, I will remand the case to state court.  In the meantime, I decline to address the law state claim, without prejudice to RTC moving to dismiss them at a later date.

## III. CONCLUSION

      I THEREFORE ORDER that RTC's motion to dismiss (**ECF No. 5**) is **GRANTED in part** as to the plaintiff's claim under 42 U.S.C. § 1983 and **DENIED without prejudice** as to the plaintiff's state law claim.  I dismiss the federal claim.  I grant Collins leave to file an

amended complaint by October 13, 2023. If she does not, I will remand the case back to state court.

I FURTHER ORDER that Clark County's joinder (**ECF No. 6**) is **GRANTED**. Clark County is dismissed from the case.

DATED this 19th day of September, 2023.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE